BEN SEITON, an unmarried man, and ESTHER LIEBLING, a single woman, v. MIAMI ROOFING & SHEET METAL INC., et al.

10 So. (2nd) 428                                           Division B
October 30, 1942          Rehearing Denied December 1, 1942

Ward & Ward and Gus Feuer, for appellants.

A. M. Sandler, for Appellee, Miami Roofing & Sheet Metal, Inc.; and Patton & Kanner, for Appellees, Howard A. Dodge, Mildred G. Dodge, his wife, Robert Lewin and Helene Lewin, his wife; appellees.

THOMAS, J.:

A final decree foreclosing a lien was rendered by the chancellor after a decree pro confesso had been entered against the defendant Seiton who eventually prosecuted this appeal. In the regular course of procedure a master sold the encumbered property, reported his actions, which were confirmed, and executed a deed to the purchaser. Immediately afterward the above appellant filed his motion to vacate the final decree and the orders which the court had subsequently entered. Thus is presented the question of the validity of the process relied upon to vest in the court jurisdiction over Ben Seiton.

The applicable statute is Section 4895, C.G.L., 1927.

In the sworn bill of the complainant it was alleged, in effect, that the defendant lived in Chicago and that no more particular residence was known. The pleader added the statement that the defendant's *address,* as particularly as he knew it, was "c/o Biscayne Distributing Company, 176 West Adams Street, Chicago,

Illinois . . ." This was obviously a business address and did not strengthen the averments of residence which were in substantial compliance with the statute. Ortell v. Ortell, 91 Fla. 50, 107 So. 442. We have the view that the latter statement did not, however, counteract the former but should be considered merely surplusage.

The appellant insists that the representations on which the service was based were insufficient because of the allusion to his address, but when these statements are weighed in the light of the testimony considered by the chancellor, at the time he entertained the motion to vacate the final decree, we cannot find any support for this position.

The chief complaint is that the *address* given was neither his residence nor his business headquarters. We think that this was established by the testimony. He has failed, however, to show that he was in anywise injured by the unnecessary averment and, on the contrary, there is abundant proof that the party actually interested in the property did, by receiving notices at that very address, become aware of the pendency of the litigation. One Blum, whose business address at the time of the service was that stated, actually owned the property in controversy. It is a reasonable construction of the evidence that communications addressed to Seiton were received and caused to be answered by the true owner, Blum. The latter during his examination made the remarkable statement: "I purchased [the property] in 1935 and I transferred title to Ben Seiton for some purpose, I think it was *income taxes,* as he had title to several of my properties, but it has been continuously in my possession since then." (Italics supplied) The former,

634

on cross examination, admitted that he was holding the property "for Mr. Howard Blum."

It was said in Ortell v. Ortell, supra, that "the purpose of constructive service by publication . . . is to bring home, if possible, to the knowledge of such defendant the pendency of the suit against him . . . and of the order to appear therein by a given date." Applying that principle to the facts in this case, it is evident that the very allegation of which the appellant complains, but which we consider no more than surplusage, redounded to the benefit of the real party in interest because at the place named he received knowledge that the appellee claimed a lien and intended to enforce it.

In these circumstances the chancellor was eminently correct in refusing to disturb his decree and it is, therefore—

Affirmed.

BROWN, C. J., TERRELL and CHAPMAN, JJ., concur.